```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RYAN B. BERNSTEIN and CHRISTIE
P. BERNSTEIN, Husband and Wife    :
                                  :      CIVIL ACTION
          Plaintiffs,             :      NO. 19-1899
                                  :
     v.                           :
                                  :
GEICO CASUALTY COMPANY,           :
a/t/a/d/b/a "GEICO"               :
                                  :
          Defendant.              :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          March 19, 2020

Presently before the Court is the motion for partial summary judgment on Count II of Plaintiffs' Complaint filed by Defendant, Geico Casualty Company ("Geico"). Plaintiffs, Ryan B. and Christie P. Bernstein, allege that Geico, in bad faith, delayed investigation and settlement payment for underinsured motorist ("UIM") benefits following an automobile accident. For the reasons set forth below, the Court will grant Geico's motion.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On December 4, 2015, Ryan Bernstein was injured when his automobile was rear-ended by a drunk driver. Mr. Bernstein collected the full limits of the tortfeasors' bodily injury policy through Geico and, on October 4, 2017, through counsel,

filed an additional claim for UIM benefits under the tortfeasors' Geico policy.

The following timeline of events presents factual allegations in the light most favorable to Plaintiffs:

- In November 2014, Ryan Bernstein was injured in an unrelated automobile accident. As of December 2, 2015, he still received medical treatment for these injuries; on this date, his physician, Dr. Nemirovsky, stated, "within a reasonable degree of medical certainty[,] that [these injuries] will require additional treatment with even neurosurgical intervention in the future." Ex. M at 3, ECF No. 28-1. Dr. Nemirovsky also stated: "the patient has developed a permanent impairment of his cervical spine," and "the patient continues to suffer from posttraumatic exacerbation of degenerative disc disease of the lumbar spine." Id.

- On December 4, 2015, Ryan Bernstein was injured by the automobile accident at issue. Plaintiffs possessed automobile insurance through Geico. ECF No. 22 at ¶ 19.

- On December 14, 2015, Ryan Bernstein notified Geico: "[i]f it turns out that the tortfeasor(s) is (are) uninsured or underinsured, please take this as notice of our intention to pursue a claim under the applicable portions of the policy." Ex. C, ECF No. 28-1. No further communications between Plaintiffs and Defendant regarding the UIM claim occurred between this correspondence and October 2017. ECF No. 22 at ¶¶ 34-36.

- On October 4, 2017, Plaintiffs, through counsel, requested Geico open a UIM file for Plaintiffs' claim. Ex. D, ECF No. 28-1.

- On October 11, 2017, Geico's UIM claims adjuster, Elizabeth Bailey, wrote Plaintiffs' Counsel acknowledging Plaintiffs' UIM claim and requesting documentation. Ex. E, ECF No. 28-1. On October 13, 2017, Ms. Bailey again wrote Plaintiffs' Counsel consenting to settlement and waiving Geico's subrogation rights. Ex. F, ECF No. 28-1.

- On October 24, 2017, Plaintiffs sent Defendant a UIM demand letter, "outlining Plaintiffs claims in great detail, and

2

provid[ing] support documentation." ECF No. 22 at ¶ 39. This letter included fourteen separate medical treatment records and described various medical treatment and advice Ryan Bernstein received from various medical professionals through mid-June, 2017. ECF No. 22 at ¶¶ 39-69. This letter "advised GEICO that Plaintiffs 'looked forward to discussing the claim . . . at [Geico's] first opportunity.'" ECF No. 22 at ¶ 74.

- On November 13, 2017, Ms. Bailey acknowledged receipt of Plaintiffs' demand letter and stated, "[o]nce we have completed our evaluation, we will contact you to discuss resolving your client's claim." Ex. H, ECF No. 28-1. On November 22, 2017, Ms. Bailey again acknowledged Plaintiffs' October 24 correspondence and stated, "[o]nce he has concluded treatment please forward me a complete demand so that I may review it for settlement." Ex. J, ECF No. 28-1.

- On December 20, 2017, Ms. Bailey "confirmed in a telephone call that GEICO has a $600k stacked Full Tort UIM Policy for this loss but made no offers of settlement" and "advised that she did not yet review the submitted documents or the merits of Plaintiffs' UIM claims," "promis[ing] to review the Plaintiffs' claims." ECF No. 22 at ¶¶ 76-77.

- Defendant Geico "unsuccessfully attempted to obtain information from plaintiffs' counsel" "[o]n three separate occasions between December 20, 2017 and March 29, 2018." ECF No. 35 at 19.

- On March 29, 2018, Plaintiff provided six supplemental medical records and advised Defendant of two additional records Plaintiffs' Counsel had requested. ECF No. 22 at ¶¶ 79-81.

- On April 16, 2018, Ms. Bailey contacted Plaintiffs' Counsel via phone and left a message requesting a return call. Ex. K, ECF. No. 28-1. Ms. Bailey requested the same via letter on April 17, 2018. Id.

- On May 22, 2018, Plaintiffs' Counsel spoke with Ms. Bailey via phone. ECF No. 22 at ¶ 85. In a May 22, 2018 letter from Plaintiffs' Counsel to Ms. Bailey summarizing this conversation, Plaintiffs' Counsel recapped that Ms. Bailey had "told [Plaintiffs' Counsel] that [Ms. Bailey] had

3

reviewed the file but that [Ms. Bailey] [was] waiting to make sure that [she] had 'everything.'" Id. at ¶ 87. Plaintiffs' Counsel stated in this letter, "waiting for 'everything' is a false premise because by definition with ongoing treatment there will always be additional information to obtain." Id. at ¶ 88. In this letter, Plaintiffs' counsel demanded policy limits, and, acknowledging Ms. Bailey's "instinct that this policy calls for Arbitration," demanded arbitration and appointed Plaintiffs' Arbitrator." Id. at ¶¶ 89-90.

- Defendant did not contact Plaintiffs again until July 25, 2018, to notify Plaintiffs their file had been reassigned to a new claims adjuster, Connie Williams. Id. at ¶ 95.

- Ms. Williams attempted to reach Plaintiffs' Counsel via phone six times between July 25, 2018 and October 5, 2018 (on July 25, August 14, August 27, August 31, September 7, and October 5), but was unable to reach Plaintiffs' Counsel on any date. Ex. L, ECF No. 28-1. Plaintiffs acknowledge "Defendant's adjuster Connie Williams called Plaintiffs' counsel on August 14, August 27, August 31, September 7th, and October 5, 2018," but does not note whether these calls were answered or returned, only that "no offers were made on the Plaintiffs' UIM claim during this interval." ECF No. 22 at ¶ 97.

- On October 12, 2018, Ms. Williams wrote Plaintiffs' counsel noting her "causality concerns given [Ryan Bernstein]'s prior history," particularly referencing his medical records before his December 2015 accident. Ex. L, ECF No. 28-1. It is unclear when Ms. Williams was first alerted to Plaintiff's 2014 accident; this constitutes the first reference to the accident in any exhibit documents. Ms. Williams noted in her October 12, 2018 letter her concerns stemmed from "MRI films show[ing] degenerative changes," but did not state which films she referenced. Id. Ms. Williams further stated in this letter, "[a]s late as November 2015 your client rated his pain 5-6 out of 10 in his c-spine," but did not state which report said this. Id.

- In her October 12, 2018 letter, Ms. Williams requested Plaintiffs' Counsel contact her for further discussion. Id.

- On December 11, 2018, Plaintiffs' Counsel submitted three additional medical records of Plaintiff's continual medical treatment. ECF No. 22 at ¶ 99.

4

- On January 16, 2019, Defendant made a $45,000 settlement offer, and requested additional records related to the "prior loss of 11/21/14 with back, neck, [and] shoulder [injuries] . . . ." Ex. N, ECF No. 28-1. See also ECF No. 22 at ¶¶ 100–101. Plaintiffs' Counsel replied, "[o]ur demand is policy limits." Ex. N, ECF No. 28-1.

- On January 31, 2019, Plaintiffs' Counsel submitted four additional medical test results. ECF No. 22 at ¶ 103. Plaintiffs' Counsel also submitted eight medical records relating specifically to Plaintiff's 2014 accident. Id.

- On February 14, 2019, Plaintiffs' Counsel sent two additional medical records. Id. at ¶ 105.

- "Rather than respond to the Plaintiffs directly, on or about March 1, 2019, Defendant hired counsel . . . ." Id. at ¶ 108. And "[o]n or about April 3, 2019, Plaintiffs filed suit against Defendant. Id. at ¶ 111.

In their amended complaint, Plaintiffs allege three counts:(1) Underinsured Motorist Benefits; (2) Statutory Bad Faith under 42 Pa. C.S. § 8371; and (3) loss of consortium. Defendant Geico seeks summary judgment on Count II, statutory bad faith. Defendants argue the delay in its settlement offer is attributable to Plaintiffs' delay in producing documentation relating to the November 2014 accident.

**II. LEGAL STANDARD**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may impact the overall outcome of the case, and an issue of material fact is genuine

5

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether a genuine issue of material fact exists, a court must consider all evidence in the light most favorable to the party opposing summary judgment. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

The party moving for summary judgment may meet its burden of proof by showing "an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Id. at 322.

**III. DISCUSSION**

    **A. Bad Faith**

42 Pa.C.S. § 8371 grants to insureds a statutory remedy when insurance companies act in bad faith, but does not define bad faith.[1] The Pennsylvania Superior Court offered

---

[1] 42 Pa. C.S. § 8371 states: "In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by the insured in an

guidance in Terletsky v. Prudential Property and Casualty Insurance Co., setting a two-prong test: to prevail on a bad faith claim, a plaintiff must show an insurance company "lacked a reasonable basis for partially denying payment" of a requested award and "recklessly disregarded a lack of reasonable basis in denying the payment." 649 A.2d 680, 689–690 (Pa. Super. Ct. 1994). Other Pennsylvania courts have adopted Black's Law Dictionary's definition of bad faith: "any frivolous or unfounded refusal to pay proceeds of a policy." See, e.g., Rottmund v. Continental Assurance Co., 813 F. Supp. 1104, 1108 (E.D. Pa. 1992) (quoting Bad Faith, Black's Law Dictionary (6th ed. 1990)). See also Zappile v. Amex Assurance Co., 928 A.2d 251, 254 (Pa. Super. Ct. 2007) ("[B]ad faith imports a dishonest purpose and means a breach of a known duty . . . , through some motive of self-interest or ill will.").

If any reasonable basis underlies an insurer's actions, a bad faith claim is defeated, even if a court finds those actions questionable. J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004) ("A reasonable basis is all that is required to defeat a claim of bad faith."); Post v. St.

---

amount equal to the prime rate of interest plus 3%. (2) Award punitive damages against the insurer. (3) Assess court costs and attorney fees against the insurer."

Paul Travelers Ins. Co., 691 F.3d 500, 522-23 (3d Cir. 2012). See also Zappile, 928 A.2d at 254 ("Bad faith may be found where there is clear and convincing proof that the insurer's actions lacked any reasonable basis . . . ."). Reasonableness may be shown through a defendant's consultation with counsel. Terletsky, 649 A.2d at 690 ("Prudential's actions were reasonably based because Prudential obtained advice of outside counsel with regard to the Terletskys' claims.").

Further, "an aggressive defense of the insurer's interest is not bad faith." Jung v. Nationwide Mutual Fire Ins. Co., 949 F. Supp. 353, 360 (E.D. Pa. 1997). An insurer who investigates legitimate questions of insurance coverage is not acting in bad faith, and no insurer is required "to submerge its own interest in order that the insured's interests may be made paramount." Hyde Athletic Indus., Inc. v. Continental Cas. Co., 969 F. Supp. 289, 307 (E.D. Pa. 1997) (quoting Cowden v. Aetna Cas. and Surety Co., 134 A.2d 223, 228 (Pa. 1957)).

Negligence or poor judgment is insufficient to show bad faith, but reckless disregard may suffice. 3039 B St. Assocs., Inc. v. Lexington Ins. Co., 740 F. Supp. 2d 671, 677 (E.D. Pa. 2010). While "a bad faith insurance practice can include an unreasonable delay in payment," Ania v. Allstate Ins. Co., 161 F. Supp. 2d 424, 430 (E.D. Pa. 2001), "a long period of time between demand and settlement does not, on its own,

8

necessarily constitute bad faith." Williams v. Hartford Cas. Ins. Co., 83 F. Supp. 2d 567, 572 (E.D. Pa. 2000) (finding no bad faith when an insurer delayed its investigation of insured's claim for **fifteen months**). If an insurer's delay "is attributable to the need to investigate further . . . no bad faith has occurred." Id. (quoting Kosierowski v. Allstate Ins. Co., 51 F. Supp. 2d 583, 589 (E.D. Pa. 1999)).

Defendant is entitled to summary judgment on this issue because, even viewing all facts in the light most favorable to Plaintiffs, there remains no genuine dispute as to any material fact whether Defendant acted in bad faith. Plaintiffs' principal argument-that the fifteen months Defendant took to make an offer of settlement shows it acted in bad faith-is not a per se violation of § 8371, and courts have found no bad faith in cases where insurers took the same length of time to evaluate a claim. See Williams, 83 F. Supp. 2d at 572. See also Segall v. Liberty Mutual Ins. Co., No. 99-6400, 2000 WL 1694026, at *2 (E.D. Pa. Nov. 9, 2000) ("The Third Circuit . . . f[ound] that a period of approximately thirteen months between the initiation of a UIM claim and its settlement did not constitute bad faith absent aggravating factors.") (citing Quaciari v. Allstate Ins. Co., 998 F. Supp. 578, 583 (E.D. Pa. 1998), aff'd without opinion, 172 F.3d 860 (3d Cir. 1998))).

9

Here, the length of time attributable to Geico's own delay is approximately nine months.[2] At issue was the extent to which the injuries alleged for the December 4, 2015 accident were attributable to the earlier accident in 2014. During the investigation, Defendant repeatedly asked Plaintiffs for additional medical documentation, repeatedly communicated with Plaintiffs' Counsel, and provided updates on the progress of the investigation. In the light most favorable to Plaintiffs, no reasonable jury could find by clear and convincing evidence that Defendant lacked <u>any</u> reasonable basis in its investigation.[3]

---

[2]     Approximately 8 months and 24 days of the approximately 1 year and 6 months that passed between Plaintiff's initial petition to Geico to open a UIM file under Plaintiffs' policy on October 4, 2017, and April 3, 2019, the date on which Geico filed suit, is attributable to delay by Plaintiffs' Counsel. 94 days passed between December 20, 2017 and March 29, 2018, during which Geico attempted three times, unsuccessfully, to reach Plaintiffs' Counsel; 35 days passed between April 17, 2018 and March 22, 2018, during which Geico asked Plaintiffs' Counsel to call them and before Plaintiffs' Counsel made this call; and 139 days passed between July 25, 2018 and December 11, 2018, during which Geico attempted to reach Plaintiffs' Counsel six times via phone and sent a letter on October 12 requesting additional medical documentation, before Plaintiffs' Counsel sent these documents.

[3]     While recognizing that they do not provide private causes of action, Plaintiff also cites to the Pennsylvania Unfair Insurance Practices Act, 40 Pa. C.S. § 1171, and the Pennsylvania Unfair Claims Settlement Practices regulations, 31 Pa. Code § 146, which each require prompt and reasonable responses from insurers in response to a claim, as further evidence of Defendant's bad faith conduct.

However, "a violation of the UIPA or UCSP is not a per se violation of the bad faith standard." <u>Dinner v. United Services Automobile Ass'n Cas. Ins. Co.</u>, 29 Fed. Appx. 823, 827

**IV. CONCLUSION**

For the reasons set forth above, the Court will grant Geico's motion for partial summary judgment and dismiss Count II of the Complaint alleging bad faith.

An appropriate order follows.

---

(3d Cir. 2002). Further, both statutes apply to behavior performed with such recurrence as to signify a general business practice. See 31 Pa. Code § 146.1; 40 Pa. C.S. § 1171.5(a)(10). Because Plaintiffs only identify an isolated instance of Defendant's alleged bad faith conduct in their argument that Defendant violated both statutes, neither is persuasive in showing Defendant lacked <u>any</u> reasonable basis in delaying Plaintiffs' claim.